IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| FRANCISCO DOMINGO VELA, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| v. | § | Civil Action No. 4:20-CV-204-O |
| | § | |
| BOBBY LUMPKIN, Director,[1] | § | |
| Texas Department of Criminal Justice, | § | |
| Correctional Institutions Division, | § | |
| | § | |
| Respondent. | § | |

## OPINION AND ORDER

Before the Court is a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 filed

by Petitioner, Francisco Domingo Vela, a state prisoner confined in the Correctional Institutions

Division of the Texas Department of Criminal Justice, against Bobby Lumpkin, director of that

division, Respondent. After considering the pleadings and relief sought by Petitioner, the Court has

concluded that the petition should be denied.

## I. BACKGROUND

In September 2015 Petitioner was indicted in Tarrant County, Texas, Case No. 1423218D,

on one count of attempted kidnapping, a state jail felony, of T.S. SHR[2] 4, ECF No. 12-11; TEX.

PENAL CODE ANN. §§ 20.03, 15.01(d) (West, Westlaw through 2019 Leg. Sess.). The indictment also

included a habitual-offender notice, which was later amended to a second-degree-felony notice,

alleging two prior felony convictions—a 1993 conviction for burglary of a habitation and a 1991

---

[1]Bobby Lumpkin has replaced Lorie Davis as director of the Correctional Institutions Division of the Texas
Department of Criminal Justice and is automatically substituted as the party respondent. FED. R. CIV. P. 25(d).

[2]"SHR" refers to the record of Petitioner's state habeas proceedings in WR-90,247-01.

conviction for retaliation. SHR 4, ECF No. 12-11; TEX. PENAL CODE ANN. § 12.425(b) (West, Westlaw through 2019 Leg. Sess.). Petitioner's jury trial commenced on August 23, 2016, and on August 25, 2016, the jury found Petitioner guilty of the offense and true to the sentence-enhancement allegation and assessed his punishment at 20 years' confinement. SHR 6, ECF No. 12-11. Petitioner's conviction was affirmed on appeal and the Texas Court of Criminal Appeals refused his petition for discretionary review. Electronic R., ECF No. 11-10. Petitioner also filed a state habeas-corpus application challenging his conviction and sentence, which was denied by the Texas Court of Criminal Appeals without written order on the findings of the trial court. SHR 12–36, ECF No. 12-11; Action Taken, ECF No. 12-8. This federal petition for habeas-corpus relief followed.

## II.  ISSUES

Petitioner raises the following grounds for relief, verbatim (all spelling, grammatical, and/or punctuation errors are in the original):

(1)   Petitioner was deprived of his 6th and 14th Amendment Constitutional rights when he wasn't given the opportunity to plea to the current charged offense;

(2)   Petitioner was deprived of his 6th and 14th Constitutional Amandments because the jury charge failed to authorize a conviction when the law describing the offense was not applied to the facts of the case;

(3)   Petitioner was deprived of his constitutional rights when the jury charge erroneously allowed a conviction on less than an unanimous verdict. (6th & 14th Amendments);

(4)   Petitioner is actually innocent of the predicate offense required for sentencing as a career offender for a second degree felony. (6th & 14th Amendments);

(5)   Petitioner's constitutional rights were denied when the Petitioner was punished as a habitual offender after it had been abandoned by the State, and failed to provide the Petitioner notice. (6th & 14th Amendment);

(6)   Petitioner was denied his constitutional rights when the trial court failed to

2

instruct the jury on the lesser-included offense of unlawful restraint. (6th & 14th Amendment);

(7)    Petitioner was deprived his constitutional rights because the evidence was factually and legally impossible to support a conviction upon testimony that was incredible as a matter of law, and there was no evidence direct or circumstantial of what the intentions of the Petitioner were. (6th & 14th Amendment);

(8)    Petitioner was deprived of his constitutional rights when the court charged the jury, in the jury charge, to allow a conviction of the lesser-included offense within the greater offense. (6th & 14th Amendment);

(9)    Petitioner was deprived his constitutional rights because the Petitioner was not provided adequate and sufficient notice of the offense charged. (6th & 14th Amendment);

(10)    Petitioner was deprived of his constitutional rights to effective assistance of counsel at the appellate level: direct appeal. (6th & 14th Amendment);

(11)    Petitioner was deprived of his constitutional rights to effective assistance of counsel at trial. (6th & 14th Amendment);

(12)    Petitioner was denied his constitutional rights when the State failed to conduct a proper investigation upon evidence that exculpated the Petitioner from the offense charged. (6th & 14th Amendment); and

(13)    The evidence is insufficient to support a finding that the Petitioner committed the offense of Attempted Kidnapping.

Pet. 6–11, ECF No. 1.[3]

## III.  RULE 5 STATEMENT

Respondent does not believe that the petition is untimely or subject to the successive-petition bar or that the claims raised are unexhausted. Resp't's Ans. 9, ECF No. 14.

## IV.  STANDARD OF REVIEW

A § 2254 habeas petition is governed by the heightened standard of review provided for in

---

[3]Additional pages are inserted into the form petition; therefore, the pagination in the ECF header is used.

the Anti-Terrorism and Effective Death Penalty Act. 28 U.S.C. § 2254. Under the Act, a writ of habeas corpus should be granted only if a state court arrives at a decision that is contrary to or an unreasonable application of clearly established federal law as established by the Supreme Court or that is based on an unreasonable determination of the facts in light of the record before the state court. 28 U.S.C. § 2254(d)(1)-(2); *Harrington v. Richter,* 562 U.S. 86, 100 (2011). This standard is difficult to meet and "stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings." *Richter*, 562 U.S. at 102.

The statute further requires that federal courts give great deference to a state court's factual findings. *Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000). Section 2254(e)(1) provides that a determination of a factual issue made by a state court shall be presumed to be correct. The petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003); *Williams v. Taylor*, 529 U.S. 362, 399 (2000). Additionally, when the Texas Court of Criminal Appeals, the state's highest criminal court, denies relief without written order, typically it is an adjudication on the merits, which is likewise entitled to this presumption. *Richter,* 562 U.S. at 100; *Ex parte Torres,* 943 S.W.2d 469, 472 (Tex. Crim. App. 1997). In such a situation, a federal court "should 'look through' the unexplained decision to the last reasoned state-court decision providing" particular reasons, both legal and factual, "presume that the unexplained decision adopted the same reasoning," and give appropriate deference to that decision. Wilson v. Sellers, --- U.S. ---, 138 S. Ct. 1188, 1191–92 (2018).

**V.  DISCUSSION**

    **A.  Lack of a Plea**

Under ground one, Petitioner claims that he was "deprived of his 6th and 14th Amendment Constitutional rights when he wasn't given the opportunity to plea to the current charged offense." Pet. 6, ECF No. 1. He states the following supporting facts (all spelling, grammatical, and/or punctuation errors are in the original):

> The Petitioner was indicted on September 21, 2015, by a Tarrant County Grand Jury in cause number 1423218 for the alleged offense of kidnapping as a habitual offender. However, Petitioner was charged, to the jury, with Attempted Kidnapping on indictment 1423218D, after an altering of the indictment. State read the kidnapping indictment for which the Petitioner plead not guilty, but charged the jury with Attempted Kidnapping which the Petitioner never made a plea to that specific charge.

*Id.*

The state habeas court entered the following factual findings regarding the issue, which were adopted by the Texas Court of Criminal Appeals in denying the claim:

> 4.     The State, when reading the indictment, stated it was under "1423218."
>
> 5.     The State read the Indictment, No. 1423218D.
>
> 6.     [Petitioner] entered his plea of not guilty to the Indictment, No. 1423218D.
>
> 7.     [Petitioner]'s claim that number "1423218" and "1423218D" are different indictments is without merit.
>
> 8.     [Petitioner] properly entered his plea of not guilty in cause number 1423218D.

SHR 145, ECF No. 12-11 (record citations omitted).

Based on its findings, the state court concluded that Petitioner properly entered a plea to the indictment. *Id.* at 153. Petitioner presents no clear and convincing evidence or persuasive argument to rebut the state court's factual findings; thus, deferring to those findings, the state court's decision is not contrary to or involve an unreasonable application of federal law as determined by the

5

Supreme Court nor is it based on an unreasonable determination of the facts in light of the record before the state court.

The indictment alleged that Petitioner did

then and there intentionally, with the specific intent to commit the offense of kidnapping, of [T.S.], do an act, to-wit: by following [T.S.] with an automobile, or by yelling at [T.S.] to get inside said automobile, or by grabbing at [T.S.] with his hand in an attempt to pull her into said automobile, in an attempt to abduct [T.S.] by restraining [T.S.] without consent by moving [T.S.] from one place to another or by confining [T.S.] with the intent to prevent the liberation of [T.S.], or to secret or hold [T.S.] in a place [T.S.] was not likely to be found, which amounted to more than mere preparation that tended but failed to effect the commission of the offense intended.

Clerk's R. 6, ECF No. 11-11.

Under Texas law, [a] person commits an offense if he intentionally or knowingly abducts another person." TEX. PENAL CODE ANN. §§ 20.03(a), 15.01(d). "'Restrain' means to restrict a person's movements without consent, so as to interfere substantially with the person's liberty, by moving the person from one place to another or by confining the person." *Id.* § 20.01(1). The term "abduct" means to restrain a person with intent to prevent his liberation by secreting or holding him in a place where he is not likely to be found. *Id.* § 20.01(2)(A). A person commits attempted kidnapping if acting with the specific intent to abduct another person "he does an act amounting to more than mere preparation that tends but fails to effect the commission of the" kidnapping. *Id.* § 15.01. Thus, contrary to Petitioner's assertion, he was charged in the indictment with the offense of attempted kidnapping; at trial the state read the indictment; Petitioner entered a not guilty plea to the indictment; and the jury was properly instructed. *Id.*, vol. 4, 140–41, ECF No. 12-2; Clerk's R. 83–84, ECF No. 11-11. Petitioner is not entitled to relief under this claim.

**B. Jury Charge Error and Defective Indictment**

Under grounds two, three, six, and eight, Petitioner claims that he was deprived of his constitutional rights because "the jury charge failed to authorize a conviction when the law describing the offense was not applied to the facts of the case"; "erroneously allowed a conviction on less than an unanimous verdict"; failed to include an instruction "on the lesser included offense of unlawful restraint"; and allowed "a conviction of the lesser included offense within the greater offense." Pet. 6–7, 8–9, ECF No. 1. Under ground nine, he claims that he was deprived of his constitutional rights because the indictment provided inadequate and insufficient notice of the offense charged. *Id.* at 9.

Under the procedural default doctrine, a federal court may not consider a state prisoner's federal habeas claims when the last state court to consider the claims expressly and unambiguously based its denial of relief on an independent and adequate state procedural default. *See Coleman v. Thompson,* 501 U.S. 722, 729, (1991); *Johnson v. Puckett,* 176 F.3d 809, 823 (5th Cir. 1999); *Fisher v. Texas,* 169 F.3d 295, 300 (5th Cir. 1999). The state habeas court found that grounds two, three, six, and eight were based on the record and should have been raised on appeal. SHR 145–46, ECF No. 12-11. Because Petitioner did not do so, the state court concluded that he could not raise them on state habeas review. *Id.* at 153.

Under Texas law, record-based claims not raised on direct appeal will not be considered in habeas proceedings. *Ex parte Gardner,* 959 S.W.2d 189, 191 (Tex. Crim. App. 1996). The Fifth Circuit recognizes Texas's procedural rule barring consideration of record-based claims not raised on direct appeal to be an adequate state ground for barring federal habeas review. *Dorsey v. Quarterman,* 494 F.3d 527, 532 (5th Cir. 2007); *Busby v. Dretke,* 359 F.3d 708, 719 (5th Cir. 2004). A habeas petitioner "may overcome the state procedural bar only by demonstrating (1) cause for the

procedural default and actual prejudice as a result of the alleged violation of federal law or (2) that failure to consider his claims will result in a fundamental miscarriage of justice." *Smith v. Johnson,* 216 F.3d 521, 524 (5th Cir. 2000) (internal quotation marks and citation omitted).

Petitioner acknowledges that the state habeas court applied the procedural bar to these claims but asserts that the state court also addressed the merits of his claims and that this Court's "failure to address the claims would result in a fundamental miscarriage of justice as the claims also depend upon and embelished [sic] or encumbered on his ineffective assistance of counsel claims." Pet'r's Mem. 11, ECF No. 2. However, when a state court rules that a claim is procedurally barred, the fact that the court alternatively reaches the merits of the claim does not vitiate the independent and adequate state procedural bar. *See Cotton v. Cockrell,* 343 F.3d 746, 754 (5th Cir. 2003). And, although a petitioner may show "cause" by proving ineffective assistance of counsel in violation of the Sixth Amendment of the Constitution, Petitioner fails to demonstrate that his ineffective-assistance-of-counsel claims have any merit, *see infra. See Martinez v. Ryan,* 566 U.S. 1, 14 (2012).

Similarly, under Texas law, "[i]f a defendant does not object to a defect, error, or irregularity of form or substance in an indictment . . . before the date on which the trial on the merits commences, he waives and forfeits the right to object to the defect, error, or irregularity and he may not raise the objection on appeal or in any other postconviction proceeding." TEX. CODE CRIM. PROC. ANN. art. 1.14(b) (West, Westlaw through 1019 Leg. Sess.) This state procedural rule is "firmly established and regularly followed by Texas courts" and is, thus, an adequate state ground for barring federal habeas review. *Ringer v. Quarterman,* No. 4:07-CV-501-A, 2009 WL 35059, at *6 (N.D. Tex. Jan. 6, 2009) (citing *Coleman,* 501 U.S. at 729). The state habeas court found "no evidence, or allegation, that [Petitioner] attacked the indictment prior to trial." SHR 148, ECF No. 12-11. Because

8

Petitioner did not do so, the state court concluded that the claim was waived. *Id.* at 157.

Petitioner also acknowledges that the state habeas court applied the procedural bar to ground nine but again asserts that this Court's failure to address the claim would result in a fundamental miscarriage of justice since "the claim is depended upon and encumbered on his ineffective assistance of counsel claim." Pet'r's Mem. 17, ECF No. 2. However, as previously noted, he fails to demonstrate that his ineffective-assistance-of-counsel claims have any merit, *see infra. See Martinez,* 566 U.S. at 14.

Because Petitioner fails to demonstrate cause to excuse the procedural default of these claims, the claims are procedurally barred from the Court's review.

### C.  Actual Innocence

Under ground four, Petitioner claims that he is "actually innocent of the predicate offense required for sentencing as a career offender for a second degree felony." Pet. 7, ECF No. 1. The state habeas court determined that this claim was actually an illegal-sentence claim and entered the following findings of fact on the issue, which were adopted by the Texas Court of Criminal Appeals in denying the claim:

> 23.   The Indictment alleged that [Petitioner] was finally convicted of burglary of a habitation (Cause No. K91-446) in 1993 and, prior to the commission of that offense, was finally convicted of retaliation (Cause No. 0415632D) on July 24, 1991.

> 24.   Evidence at trial demonstrated that [Petitioner] was convicted of the offenses of burglary of a habitation and retaliation as alleged.

> 25.   There is evidence that [Petitioner] was finally convicted of the prior convictions as alleged in the indictment.

> 26.   There is evidence that his burglary of a habitation and retaliation convictions were not sequential because he committed the burglary of a habitation before

he was convicted of the retaliation.

27.     The jury heard evidence that [Petitioner] was finally convicted of the felony offense of escape on May 4, 1987.

28.     The jury heard evidence that [Petitioner] was finally convicted of two sequential felonies prior to the commission of this offense.

SHR 146–47, ECF No. 12-11.

Based on those findings and applicable state law, the state habeas court entered the following

legal conclusions:

23.     "An illegal sentence is one that is not authorized by law; therefore, a sentence that is outside the range of punishment authorized by law is considered illegal."

24.     "(b) If it is shown on the trial of a state jail felony punishable under Section 12.35(a) that the defendant has previously been finally convicted of two felonies other than a state jail felony punishable under Section 12.25(a), and the second previous felony conviction is for an offense that occurred subsequent to the first previous conviction having become final, on conviction the defendant shall be punished for a felony of the second degree."

25.     The convictions alleged in the habitual offender notice, and found true by the jury, were valid but not subsequent.

26.     An applicant must show actual harm when alleging an illegal sentence.

27.     Because the State could have properly enhanced [Petitioner] with another subsequent felony conviction, the State proved the other felony during the trial, and the jury heard evidence of the other prior felony, [Petitioner] failed to prove that he was actually harmed by the erroneous enhancement. [*See Ex parte Parrott,* 396 S.W.3d 531, 536–36 (Tex. Crim. App. 2013) (providing habeas applicant did not show harm when the habeas record established that the applicant was previously convicted of other felony offenses, each of which could have properly been used to enhance the punishment range within which he was admonished and sentenced)].

*Id.* at 154–55 (citations omitted).

Although Petitioner makes a fleeting reference to the Sixth and Fourteenth Amendments,

whether a state petitioner's sentence was properly enhanced is generally a matter of state law. *See Gabel v. McCotter,* 806 F.2d 1257, 1258 (5th Cir. 1986); *Rubio v. Estelle,* 689 F.2d 533, 536 (5th Cir. 1982); *Jones v. Stephens,* No. 4:14-CV-076-A, 2015 WL 5164727, at *3 (N.D. Tex. Sept 1, 2015). Such claims do not present an issue cognizable on federal habeas review and a federal court must typically defer to the state court's interpretation and application of its own law. Petitioner is not entitled to relief under this claim.

### D.  Improper Habitual Offender Enhancement

Under ground five, Petitioner claims that his "constitutional rights were denied when [he] was punished as a habitual offender after it had been abandoned by the State, and failed to provide [him] notice." Pet. 8, ECF No. 1. The day before Petitioner's trial commenced, the state requested that the indictment be amended to reflect the correct punishment range by striking the words "habitual offender notice," and the trial court ruled that the words were surplusage and struck the words from the indictment. Reporter's R., vol. 3, 5–6, ECF No. 12-1.

Under state law, unnecessary words or allegations in an indictment may be rejected as surplusage if they are not descriptive of that which is legally essential to the validity of the indictment. *Franklin v. State,* 659 S.W.2d 831, 833 (Tex. Crim. App. 1983); *Windham v. State,* 638 S.W.2d 486, 487 (Tex. Crim. App. 1982). *See also* TEX. CODE CRIM. PROC. ANN. art. 28.10 (West, Westlaw through 2019 Leg. Sess.) (providing "a matter of form or substance in an indictment or information may be amended at any time before the date the trial on the remits commences"). The state habeas court found that the state did not strike the enhancement paragraph, but merely "struck the surplusage words 'habitual offender notice' because the enhancement was a second-degree enhancement paragraph" and not a habitual-offender enhancement. SHR 147, ECF No. 12-11.

Petitioner presents no clear and convincing evidence or persuasive argument to rebut the state court's factual findings; thus, deferring to those findings, the state court's decision is not contrary to or involve an unreasonable application of federal law as determined by the Supreme Court nor is it based on an unreasonable determination of the facts in light of the record before the state court. Furthermore, the indictment, as amended, was sufficient to give Petitioner notice that the state intended to seek an enhanced sentence based on his prior criminal history. Petitioner is not entitled to relief under this claim.

### E.  Insufficient Evidence

Under grounds seven and thirteen, Petitioner claims that "the evidence was factually and legally impossible  to support his conviction upon [T.S.'s] testimony that was incredible as a matter of law, and there was no evidence direct or circumstantial of what the intentions of the Petitioner were" and that the evidence was insufficient to support a finding that he committed the offense because there was no physical contact with T.S. Pet. 8, 11, ECF No. 1.

Federal courts have extremely limited habeas review of claims based on the sufficiency of the evidence, and the standard for reviewing such claims is supplied by *Jackson v. Virginia,* 443 U.S. 307 (1979). In *Jackson,* the Supreme Court held that the correct standard of review when a state prisoner challenges the sufficiency of the evidence in a federal habeas proceeding is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 319. It is within the sole province of the jury to judge the credibility of witnesses, evaluate witnesses' demeanor, resolve conflicts in testimony, and weigh evidence in drawing inferences from the facts. *United States v. Millsaps,* 157 F.3d 989, 994 (5th Cir. 1998). Courts do not second-guess the weight or

12

credibility given the evidence. *United States v. Ramos-Garcia,* 184 F.3d 463, 465 (5th Cir. 1999).

Moreover, where a state appellate court has conducted a thoughtful review of the evidence, its

determination is entitled to great deference. *Callins v. Collins,* 998 F.2d 269, 276 (5th Cir. 1993).

Applying the *Jackson* standard and relevant state law, the appellate court addressed the claim

in the last reasoned opinion on the issue as follows:

### B. Indictment

The State alleged that [Petitioner], with the specific intent to commit kidnapping, followed T.S. with an automobile, yelled at her to get inside his vehicle, or grabbed at her with his hand, attempting to pull her into his van to restrain her without her consent by moving her from one place to another or by confining her with the intent to prevent her liberation in an attempt to abduct her or to secret or hold her in a place that she was not likely to be found. The State also alleged that [Petitioner]'s attempts amounted to more than mere preparation and that they tended but failed to effect committing the intended offense.

### C. Evidence

On July 26, 2015, about a year before trial, T.S. had just turned 16. She lived on Bethune Street in Fort Worth. About two blocks away on Ramey Avenue was the "red store," which she described as a corner store that sold snacks and cigarettes and which was owned by her uncle. Between her house and the store was the Humble Chapel Baptist Church.

On that July evening she had walked to her uncle's store only to find it closed, so she started walking back to her house. As she did so, T.S. noticed a white van following her. When T.S. turned left at an intersection, the white van turned left as well, which caused T.S. some concern, so she began walking faster. When she turned around, the driver started talking to her: "He was like, come here, get in the van with me, reaching out his window trying to touch me, grab me," T.S. testified. Not recognizing the man and never having spoken to him before, T.S. said nothing and kept walking. When the driver continued to grab at her and yell at her to get in his van, T.S. went off onto a narrow dirt trail to get away from him, but when she got to the end of the trail, the van was there blocking her way. She then turned around and ran inside the front vestibule of the Humble Chapel Baptist Church.

T.S. testified that no one was in the vestibule and that everyone was beyond the vestibule's door in a church service. From the vestibule, T.S. used her cell phone

to call her mother and sister to come and get her because she was very scared, but her sister was the only person she managed to talk to.

While at the church, T.S. looked out the doors and did not see the white van, so she walked out only to spot it again, this time at a stop sign at the end of the street. After the driver saw her and started driving toward her, she ran again and—to get away from him—jumped down into "this ditch thing," which photographs showed to be a cemented water-drainage ditch. T.S. testified that when the driver saw her jump into the ditch, he drove in the opposite direction.

T.S. climbed out of the ditch at the gated exit on Elgin Street, where her sister met her, and the two then ran to their house, which was close by. T.S. testified that it was very hot, and when they got to their house, she threw up on the porch and cried as she told her mother what had happened.

T.S.'s mother responded to the incident by telling her daughters that she was going to look for the white van, so T.S. changed into some clean clothing, and T.S., her mother, and her sister walked back toward her uncle's store; there, they spotted both the white van and its driver. Her mother called the police and gave them the van's license-plate number.

When the police arrived at the store, they spoke to T.S., her mother, and her sister and then arrested [Petitioner] at the scene.

In court, T.S. identified [Petitioner] as the driver. The police had initially shown T.S. pictures of different people, but she was unsure at the time if [Petitioner] was in the photo lineup. She said the police told her that the photo of the suspect was old and so she might not recognize him, but that she was to do her best. She picked one photo, which was not of [Petitioner], but was unsure. In contrast, at the "red store" she was certain [Petitioner] was the driver.

D. Discussion

[Petitioner] contends that simply following T.S., yelling at her, and trying to touch her was insufficient to support his conviction. But the evidence shows more than simply following, yelling, and trying to touch. The evidence shows [Petitioner] actively pursuing—even hunting—T.S., thwarting her attempts to escape, yelling at her to get in his vehicle, and grabbing at—not merely trying to touch—her. Viewing the evidence in the light most favorable to the verdict, a rational juror could believe beyond a reasonable doubt that [Petitioner] followed T.S. in his automobile, yelled at her to get inside, and attempted to grab her with his hand to pull her into his van to restrain her without her consent by moving her from one place to another or by confining her with the intent to prevent her liberty in an attempt to abduct her by

14

secreting or holding her in a place that she was not likely to be found, as the State alleged. A rational juror could also believe beyond a reasonable doubt that his attempts amounted to more than mere preparation and that they tended but failed to effect the intended offense.

[Petitioner] also argues that there was no evidence of his using or threatening to use deadly force. This argument misses the mark: the State did not need to show that, because the State did not plead it. The State proceeded under the alternate provision—that [Petitioner] restrained T.S. with the intent to prevent her liberation by secreting or holding her in a place where she was not likely to be found.

Finally, [Petitioner] argues that other evidence showed the jury was wrong to believe T.S. The jury, not the defendant and not the appellate court, determines which witnesses to believe and what weight to assign the evidence. A single eyewitness's testimony can be enough to support a conviction. T.S.'s testimony was sufficient to prove [Petitioner] committed the offense of attempted kidnapping.

Mem. Op. 3–7, ECF No. 11-3 (footnotes and citations omitted).

The state court's decision comports with *Jackson* and is reasonable in light of the evidence adduced at trial. Clearly, the jury found T.S.'s testimony credible, and Texas law provides that Petitioner's intent can be inferred from his acts, words, and conduct, notwithstanding the absence of any actual physical contact. *See Guevara v. State,* 152 S.W.3d 45, 50 (Tex. Crim. App. 2004). Petitioner is not entitled to relief under these claims.

### F. Ineffective Assistance of Counsel

Under grounds ten and eleven, Petitioner claims that he received ineffective assistance of trial and appellate counsel. Pet. 10, ECF No. 1. A criminal defendant has a constitutional right to the effective assistance of counsel at trial and on a first appeal as of right. U.S. CONST. amend. VI, XIV; *Evitts v. Lucey*, 469 U.S. 387, 393–95 (1985); *Strickland v. Washington*, 466 U.S. 668, 688 (1984); *Anders v. California*, 386 U.S. 738, 744 (1967). *See also Styron v. Johnson,* 262 F.3d 438, 450 (5th Cir. 2001) (applying the *Strickland* standard to ineffective assistance claims against appellate

15

counsel). An ineffective-assistance claim is governed by the familiar standard set forth in *Strickland v. Washington*. 466 U.S. at 668. To establish ineffective assistance of counsel under this standard, a petitioner must show (1) that counsel's performance fell below an objective standard of reasonableness, and (2) that but for counsel's deficient performance the result of the proceeding would have been different. *Id.* at 688. Both prongs of the *Strickland* test must be met to demonstrate ineffective assistance. *Id.* at 687, 697.

In applying this standard, a court must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance or sound trial or appellate strategy. *Id*. at 668, 688–89. Judicial scrutiny of counsel's performance must be highly deferential. *Id.* at 689. Where, as here, the state courts adjudicated the ineffective-assistance claims on the merits, this court must review a petitioner's claim under the "doubly deferential" standards of both *Strickland* and § 2254(d). *Cullen v. Pinholster,* 563 U.S. 170, 190 (2011). In such cases, the "pivotal question" for this Court is not "whether defense counsel's performance fell below *Strickland*'s standard"; it is "whether the state court's application of the *Strickland* standard was unreasonable." *Richter,* 562 U.S. at 101, 105.

Petitioner asserts that trial counsel was ineffective because he (all spelling, grammatical, and/or punctuation errors are in the original)

    (1)    failed to object to the State's charging instrument as it failed to give sufficient notice to the type of restraint it would prove;

    (2)    failed to challenge the State's altering of the indictment;

    (3)    failed to object to the jury charge which didn't give the lesser-included instruction contained in the charging instrument;

    (4)    failed to object to the language within the charge that would have allowed the

jury to find guilt by either unlawful restraint or kidnapping;

(5)  failed to challenge the jury charge because it did not require a unanimous verdict to find guilt;

(6)  failed to object to the court's jury charge Application Paragraph, as it misapplied law of restraint in accordance with the charge;

(7)  failed to challenge the court's charge in the requirement of finding the Petitioner as a habitual offender;

(8)  allowed the State to charge Petitioner with habitual offender after it abandoned such charge;

(9)  failed to subpoena or call witnesses, that purported family, mother, alleged victim, fabricated and concocted the incident in an attempt to receive victim's compensation funds;

(10)  failed to offer a plea bargain offered by the State of (8) years, as opposed to the original offer based on Kidnapping; and

(11)  allowing extraneous evidence that Petitioner's pants were down in the van and he MAY have been masterbating.

Pet. 10, ECF No. 1 (emphasis in original).

Petitioner was represented at trial by Richard C. Kline and John G. Johnson. Both attorneys submitted affidavits in the state habeas proceedings responding to Petitioner's allegations. Kline responded as follows (all spelling, grammatical, and/or punctuation errors are in the original):

[Petitioner] asserts in Ground Eleven 11 reasons, labeled a.-k. the manner in which trial counsel was ineffective.

**Reason a.**  [Petitioner] asserts that trial counsel was ineffective for failing to object to the Court's charge for failure to give notice. I believed that the Court's charge gave adequate notice because it tracked the statute defining the offense of attempted kidnaping, stated he was charged with attempted kidnaping, and contained a definition of "attempt"

**Reason b.**  [Petitioner] asserts that trial counsel was ineffective for failing to object to the State's amendment to the Indictment and move for a directed verdict

17

because it was never read to the jury. I did object to the manner in which the Indictment was amended. The Court ruled the language "Habitual Offender" was surplusage and the State could amend the Indictment by striking the language. I researched this issue prior to the trial in chief and believe the Court's ruling was coffect. The amended Indictnent was read to the jury.

**Reason c.**     [Petitioner] asserts that trial counsel was ineffective for failing to object to the jury charge because it failed to instruct the jury of the "lesser included offense of unlawful restraint." [Petitioner] was not charged [with] unlawful restraint. lt was the crux of our defense that [Petitioner] did not touch the girl. At trial it was adduced that the victim was under 17 at the time, therefore the charge would be "unlawful restraint of a person under 17", which is a State Jail Felony, just like attempted kidnaping. This was trial strategy in that I did not want to give the jury two possible crimes of the same level to possibly convict the [Petitioner].

**Reason d.**     [Petitioner] asserts that trial counsel was ineffective for failing to object to the jury charge because it applied the law of attempted kidnaping and unlawful restraint in a single application paragraph. The charge does not apply the law of unlawful restraint, but gives the statutory definition of attempted kidnaping.

**Reason e.**     [Petitioner] asserts that trial counsel was ineffective for failing to object to the jury charge because it did not require an unanimous verdict. I did make this objection, which was overruled Page 4 of the Jury Charge requires that the "verdict must be by an unanimous vote."

**Reason f.**     [Petitioner] asserts that trial counsel was ineffective for failing to object to the jury charge because it did not properly apply the law of restraint to the case. Again, [Petitioner] was not charged with restraint, but attempted kidnaping.

**Reason g.**     [Petitioner] asserts that trial counsel was ineffective for failing to object ro the jury charge because it did not instruct the jury as to the law and requirement of finding [Petitioner] guilty as a Habitual Offender. [Petitioner] was charged with Attempted kidnaping, a State Jail Felony, and could not be charged as a Habitual Offender.

**Reason h.**     [Petitioner] asserts that trial counsel was ineffective for failing to object to the jury charge's habitual offender notice and the offense could not be charged as a State Jail Felony. I did object to the amendment of the Indictment [Petitioner was charged with Attempted Kidnaping, which is a State Jail Felony.

**Reason i.**     [Petitioner] asserts that trial counsel was ineffective for failing to call a witness to testify that the victim and her family concocted the incident. When I first consulted with [Petitioner] in August, 2015 at the Tarrant County Jail, he told me the

18

victim's Uncle Joshua Tasby told him while they were locked up together, that 'the victim was making this up to get crime victim compensation money.' In October, 2015, I had Stan Keeton appointed as the investigator on this case and sent him a memo regarding Tasby's purported testimony and with his telephone number. On January 28, I spoke with Joshua Tasby on the telephone. He told me that he knew [Petitioner] from the neighborhood, but not personally; that he had seen his niece earlier in the day: that he had seen a white van matching [Petitioner]'s van driving around the neighborhood, but had lost sight of his niece. He told me he had gone to his niece's house about 20 minutes later and no one said anything about anyone trying to abduct his niece. He told me no one told him 'they had made it up'. He refused to give me his address, and told me 'he could not afford to miss work and if I did subpoena him I would not like what he said'. I spoke with Stan Keeton regarding my conversation with Tasby. He told me that Tasby had told him something different still. I decided that Tasby was not reliable as a witness, and could possibly do considerable damage to the defense.

On January 26, 2016, Stan Keeton and I went to the Stop Six neighborhood where this allegedly occurred. We spoke to the people at the neighborhood convenience store where [Petitioner] was arrested. I don't recall asking about video, but Stan may have because that was his customary practice based on my knowledge of other cases we worked together. Stan Keeton is now deceased and I don't have access to his notes on this matter. We spent about two hours conducting our investigation, speaking to neighbors who remembered hearing about some girl and a guy in a van. Stan spoke to the victim's mother while I waited at the curb. She gave us a different version of her discussions with Joshua Tasby, and claimed he 'thought [Petitioner] would give her money if she dropped the charges'. We viewed the scene as laid out in the police report. The girl had claimed she hid in a church to avoid the man in the white van. We located the church and got contact information regarding the pastor, George Polk. I and Stan Keeton had a few conversations with Pastor Polk, who is elderly. I subpoenaed him and he testified at trial that the church was locked, and the girl could not have been hiding in the church. I also called the Deacon, Emmitt Belcher, to corroborate Pastor Polk's testimony. I also spoke with a Kay Taylor, who's information was provided to me by the [Petitioner]. She was with the [Petitioner] for about 30 minutes before he was arrested. She did not have any direct knowledge other than that [Petitioner] was at the store. She had a long history of drug and prostitution convictions so I did not think she would be a credible witness.

**Reason j.**     [Petitioner] asserts that trial counsel was ineffective for failing to inform him about the eight year plea offer. On August 19, 2016 , I telephoned [Petitioner] and informed the eight year plea offer. He rejected the offer and did not have a counter offer for me to present. On August 22, 2016 the offer was conveyed to [Petitioner] in Court and on the record. He rejected the offer and demanded a jury trial

19

**Reason k.**     [Petitioner] asserts that trial counsel was ineffective for failing to object to the extraneous offense evidence that [Petitioner] had his pants down and may have been masturbating. I did object to the extraneous offense. The Court granted my Motion in Liminie and instructed the State to approach before and get a ruling before introducing the evidence.

SHR 125–29, ECF No. 12-11 (record citations omitted).

Johnson responded to Petitioner's allegations as follows (all spelling, grammatical, and/or punctuation errors are in the original):

[Petitioner] has filed a Writ of Habeas Corpus in which he alleges trial counsel was ineffective and states reasons a through k. Below is my answer to those allegations:

a. The indictment was clear and was reviewed by attorneys. The charge was read to the jury, see below. The indictment was clear and did give notice to the defendant, his attorneys and to the jury as to what defendant was being accused. The indictment makes clear he had attempted to kidnap but filed to effect the commission of kidnapping.

b. After the jurors came in and were seated the Indictment was read to the jury.

c. Unlawful Restraint would Have been a State Jail Felony. The punishment with enhancement would have been 2 to 20 Years. Penal Code 20. 02 (c) (1) Unlawful Restraint (c) An offense under this section is a Class A misdemeanor, except that the offense is: ( 1) a state jail felony if the person restrained was a child younger than 17 years of age:

Then see volume 4 page 171 of Trial Record.: testimony [T.S.] was 16 years old at date in indictment.

d. See indictment read to the jury volume 4 pages 140-141 does not apply attempted kidnapping and unlawful restraint in a single application.

e. Page 4 of courts charge required unanimous verdict. That indictment was read to the jury, see volume 6 page 60 states a unanimous verdict required. See also objection by attorney Kline as to charge not requiring unanimous verdict because some could rely on: following, yelling or grabbing. Court ruled unanimous attempted kidnapping OK method used to attempt not issue requiring unanimous.

f. Restraint not an issue. Court explained attempted kidnapping, see Volume 6 page 56.  Charge was attempted kidnapping.

g. Counsel off record talked to prosecutor about habitual offender enhancement and cited court cases. Prosecutor on record tells judge actually state jail and punishment range is 2 to 20 year with enhancement and ask to delete habitual. Therefore no requirement to instruct jury on habitual since 20 years is maximum punishment on state jail with 2 prior felonies.

h. The jury charge did not include habitual offender. The offense was a state jail and was not reduced to state jail, habitual punishment was deleted, see g above.

i. Counsel did hire an investigator and did call witnesses to discredit testimony of alleged victim. See Volume 6 page 15 Pastor George Polk and volume 6 page 44 Emmett Belcher Jr. that testified that alleged victim's testimony could not have happened because church closed and not open at time in her testimony. Another possible witness by the name of Joshua Tasby was interviewed, but ruled out as witness. After interviewing witness he changed his story and then said he would deny telling information to Vela. He met Mr. Vela while he was locked up with him at the Tarrant County Jail. His testimony would have been his opinion as to why other witnesses were lying. Other information he said he had about Mr. Vela would have been harmful.

j. Offer was communicated to client. See volume 3 page 5 Sate offers 8 years Texas Department of Corrections. Court asks was the offer communicated to client and attorney says yes. Then court asks client if he would like to accept and client says no and would like to proceed to trial.

k. Counsel objected to extraneous offense Motion to the judge, see volume 3 pages 8–9. The judge instructed the prosecution to approach the bench before presenting that information. See volume 3 page 10.

In addition to the above facts trial counsel retained an investigator who was able to find witnesses who appeared in court to testify with information to discredit the State's witnesses. The investigator also brought one of the witnesses to court when called to testify. Trial counsel reviewed and was familiar with all police reports and information supplied by the District Attorney's office. The above attorney visited the area described in the above police report.

*Id.* at 131–33 (record citations omitted).

Based on counsel's affidavits, Petitioner's response and objections to counsel's affidavits,

the documentary record, and her own recollection of the trial proceedings, the state habeas court entered the following factual findings on the issue:

48.   Counsel did not object to the charging instrument because it gave proper notice.

49.   Counsel objected to the trial court striking the words "habitual offender notice" from the indictment.

50.   Counsel did not object to the failure of the jury charge to include the offense of unlawful restraint because [Petitioner] was not charged with unlawful restraint.

51.   Counsel concluded unlawful restraint was an equal level offense (state jail felony); therefore, they made a strategic decision to not request an additional crime for the jury to choose from.

52.   Counsel did not object to the jury charge because it properly alleged attempted kidnapping.

53.   Counsel objected on the basis that the jury charge allowed for a non-unanimous verdict.

54.   Counsel did not object to the jury charge because it properly applied the law of restraint in this case.

55.   The jury charge followed the statute regarding the habitual offender finding in a trial for a state jail felony.

56.   It is reasonable that counsel did not object to the jury charge regarding the second degree felony notice because it properly tracked the statute.

57.   It is reasonable trial counsel did not object to the inclusion of second degree enhancement allegation in the jury charge because the State did not waive the enhancement.

58.   [Petitioner] presents no evidence to support his claim that there was additional evidence that the victim and her family fabricated and concocted the incident.

59.   Counsel hired an investigator.

60.    Counsel tried to find evidence that would support the claim that the victim and her family fabricated and concocted the incident.

61.    Counsel presented at trial the only evidence they found that they concluded would benefit [Petitioner]'s defense.

62.    Counsel's decision to not call unreliable witnesses and witnesses who would present harmful evidence was the result of reasonable trial strategy.

63.    Trial counsel communicated the eight year plea offer to [Petitioner].

64.    [Petitioner] rejected the State's eight year plea offer on the record.

65.    [Petitioner]'s response to the trial court indicates that he was not willing to accept any plea offer.

66.    Because [Petitioner] alleges that he was never informed of the plea offer, and he rejected the plea offer on the record, [Petitioner]'s allegation that counsel did not advise him of the advantages/disadvantages of his plea is not credible.

67.    There is no credible evidence that [Petitioner] would have accepted the plea offer had counsel advised him any differently.

68.    Counsel moved to suppress the extraneous offense evidence that [Petitioner] had his pants down in the van and may have been masturbating.

69.    The trial court found that the fact that [Petitioner] may have been masturbating in the van was admissible as contextual evidence.

70.    The trial court sustained counsel's objections regarding statements about how [Petitioner] was found in his van.

71.    Counsel objected, again, to the admission of [Petitioner]'s interview at the time it was to be admitted to the jury.

72.    Counsel did not object to the fact that [Petitioner] was found with his pants at mid-thigh.

73.    [Petitioner] presents no authority to support his claim that counsel should have objected to testimony that [Petitioner] had his pants down.

74.    Counsel objected to the testimony that [Petitioner] appeared to be sweating.

75.     The officer testified that he did not see [Petitioner] masturbating.

76.     On cross-examination, the officer testified that he did not ask a person who was standing with [Petitioner] whether he saw [Petitioner] masturbating.

77.     Counsel's objections regarding the masturbation were the result of reasonable trial strategy.

78.     Counsel's affidavits are credible and supported by the record.

79.     There is no credible evidence that counsel's representation fell below an objective standard of reasonableness.

80.     There is no credible evidence that a reasonable likelihood exists the outcome of the proceedings would have been different but for the alleged misconduct of trial counsel.

*Id.* at 149–52 (record citations omitted).

Based on its findings, which were adopted by the Texas Court of Criminal Appeals in denying the claims, and applying the *Strickland* standard, the state court made the following legal conclusions:

73.     [Petitioner] has failed to prove that counsel failed to properly object when required by law.

74.     [Petitioner] has failed to prove that counsel's investigation was deficient.

75.     [Petitioner] has failed to prove that counsel should have presented more witnesses at trial.

76.     Counsel properly advised [Petitioner] of the State's eight year plea offer.

77.     [Petitioner] has failed to prove that counsel failed to properly advise him regarding the advantages/disadvantages of accepting/rejecting the State's offer.

78.     [Petitioner] has failed to prove that counsel's representation fell below an objective standard of reasonableness.

79.     A party fails to carry his burden to prove ineffective assistance of counsel

24

where the probability of a different result absent the alleged deficient conduct "sufficient to undermine confidence in the outcome" is not established.

80.     "[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. The object of an ineffectiveness claim is not to grade counsel's performance. *If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.*"

81.     [Petitioner] has failed to show that there is a reasonable probability that the result of the proceeding would have been different had counsel objected more.

82.     [Petitioner] has failed to show that there is a reasonable probability that the result of the proceeding would have been different had counsel objected differently.

83.     [Petitioner] has failed to show that there is a reasonable probability that the result of the proceeding would have been different had counsel investigated more.

84.     [Petitioner] has failed to show that there is a reasonable probability that the result of the proceeding would have been different had counsel discovered more witnesses.

85.     [Petitioner] has failed to show that there is a reasonable probability that the result of the proceeding would have been different had counsel called more witnesses at trial.

86.     [Petitioner] has failed to show that there is a reasonable probability that the result of the proceeding would have been different had counsel presented more evidence.

87.     [Petitioner] has failed to show that there is a reasonable probability that the result of the proceeding would have been different had counsel advised him differently regarding the State's plea offer.

88.     [Petitioner] has failed to show that there is a reasonable probability that, but for the alleged acts of misconduct, the result of the proceeding would be different.

89.     [Petitioner] has failed to prove that he received ineffective assistance of trial

counsel.

*Id.* at 159–62 (citations omitted) (emphasis in original).

Petitioner presents no clear and convincing evidence or persuasive argument to rebut the state courts' factual findings: thus, deferring to those findings, and having independently reviewed Petitioner's claims in conjunction with the state court records, the state court's adjudication of the claims was not an unreasonable application of *Strickland.* Petitioner's claims are conclusory, with no legal and/or evidentiary basis, refuted by the record, involve state evidentiary rulings or other matters of state law, involve strategic and tactical decisions made by counsel, or would have required counsel to make frivolous objections, all of which generally do not entitle a state Petitioner to federal habeas relief. *See, e.g., Strickland,* 460 U.S. at 689 (holding strategic decisions by counsel are virtually unchallengeable and generally do not provide a basis for postconviction relief on the grounds of ineffective assistance of counsel); *Johnson v. Cockrell,* 306 F.3d 249, 255 (5th Cir. 2002) (concluding that counsel is not required to make futile motions or frivolous objections); *Green v. Johnson,* 160 F.3d 1029, 1037, 1042 (5th Cir. 1998) ("[m]ere conclusory allegations in support of a claim of ineffective assistance of counsel are insufficient to raise a constitutional issue" and "counsel is not required to file frivolous motions or make frivolous objections"); *United States v. Green,* 882 F.2d 999, 1003 (5th Cir. 1989) (providing "[a] defendant who alleges a failure to investigate on the part of his counsel must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial"); *Alexander v. McCotter,* 775 F.2d 595, 602 (5th Cir. 1985) (providing ineffective assistance claims based upon uncalled witnesses are disfavored and conclusory if unsupported by affidavits indicating the witnesses' willingness and availability to testify and the substance of the proposed testimony).

26

A petitioner shoulders a heavy burden to refute the premise that "an attorney's actions are strongly presumed to have fallen within the wide range of reasonable professional assistance." *Messer v. Kemp,* 760 F.2d 1080, 1090 (11th Cir. 1985). Petitioner presents no evidentiary, factual, or legal basis in this federal habeas action that could lead the court to conclude that the state courts unreasonably applied the standards set forth in *Strickland* based on the evidence presented in state court. 28 U.S.C. § 2254(d). Even if Petitioner could demonstrate defective assistance based on one or more of his claims, in view of the evidence of his guilt and his lengthy criminal history, he cannot make a showing of *Strickland* prejudice–*i.e.,* that but for counsel alleged acts or omissions, the jury would have acquitted him of the offense and/or his sentence would have been significantly less harsh.

Petitioner also claims that his appellate counsel was ineffective by failing to raise the following issues (all spelling, grammatical, and/or punctuation errors are in the original):

(1)     The evidence was factually and legally insufficient to support the conviction;

(2)     The evidence was factually and legally insufficient to support the jury's finding the Petitioner was a habitual offender;

(3)     The court's charge did not require the jury to convict on the unanimous verdict;

(4)     The evidence was legally and factually impossible to support the jury's finding of guilt because it was so unbelievable on its face in relation to physical evidence, that the testimony should have been declared incredible as a matter of law; and

(5)     There was no evidence that Petitioner attempted to kidnap, because the Petitioner's conduct did not infer or force the conclusion ipso facto that the Petitioner was going to kidnap [T.S.].

Pet. 10, ECF No. 1.

The state habeas court entered the following factual findings on the issue, which were adopted by the Texas Court of Criminal Appeals in denying the claims:

38.    The Second Court of Appeals found the evidence sufficient to support [Petitioner]'s conviction

39.    The jury charge properly applied the law to the facts.

40.    [Petitioner] alleges that the "evidence was factually and legally insufficient to support the jury's finding that the [Petitioner] was a habitual offender because the trial court's charge to the jury did not instruct the jury on the law and authorize the jury to asses[s] punishment against the [Petitioner] as a habitual offender."

41.    Even though [Petitioner] states him [sic] claim in terms that the evidence was insufficient, his allegation is that counsel should have alleged on appeal that the jury charge was deficient.

42.    [Petitioner] does not allege that appellate counsel should have attacked the legal sufficiency of the punishment evidence.

43.    The jury charge followed the statute regarding the habitual offender finding in a trial for a state jail felony.

44.    The jury charge authorized the jury to assess punishment against [Petitioner] as a habitual offender.

45.    The jury charge required a unanimous verdict.

46.    No affidavit is required from appellate counsel because there is a plausible basis in strategy for appellate counsel's actions.

SHR 148–49 (citations omitted).

Based on its findings, and applying the *Strickland* standard, the state court made the following legal conclusions:

49.    An attorney is under an ethical obligation not to raise frivolous issues on appeal.

50.    An attorney is prohibited from raising claims on appeal that are not founded

28

in the record.

51.    Appellate counsel properly attacked on appeal the sufficiency of the evidence supporting [Petitioner]'s conviction.

52.    [Petitioner] has failed to prove that the jury charge was defective.

53.    [Petitioner] has failed to prove that appellate counsel should have raised on appeal that the jury charge was defective.

54.    [Petitioner] has failed to prove that his appellate attorney's representation fell below an objective standard of reasonableness.

55.    A party fails to carry his burden to prove ineffective assistance of counsel where the probability of a different result absent the alleged deficient conduct "sufficient to undermine confidence in the outcome" is not established.

56.    "[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. The object of an ineffectiveness claim is not to grade counsel's performance. *If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.*"

57.    [Petitioner] has failed to show that there is a reasonable likelihood that the outcome of the appellate proceeding would have been different had appellate counsel raised on direct appeal that the jury charge was defective.

58.    [Petitioner] has failed to show that there is a reasonable likelihood that, but for the alleged acts of misconduct, the result of the appellate proceeding would have been different.

59.    [Petitioner] has failed to prove that he received ineffective assistance of appellate counsel.

*Id.* at 157–59 (citations omitted) (emphasis in original).

Petitioner presents no clear and convincing evidence or persuasive argument to rebut the state courts' factual findings: thus, deferring to those findings, and having independently reviewed Petitioner's claims in conjunction with the state court records, the state court's adjudication of the

claims was not an unreasonable application of *Strickland.* Appellate counsel is not required to raise every conceivable argument urged by his or her client on appeal, regardless of merit. *Smith v. Robbins,* 528 U.S. 259, 287-88 (2000). It is counsel's duty to choose among potential issues, according to his judgment as to their merits and the tactical approach taken. *Jones v. Barnes,* 463 U.S. 745, 749 (1983). Petitioner presents no potentially meritorious issues that appellate counsel could or should have included in his appellate brief. Appellate counsel is not ineffective for failing to assert meritless claims or arguments. *See United States v. Wilkes,* 20 F.3d 651, 653 (5th Cir. 1994).

## VI.  CONCLUSION

For the reasons discussed, Petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is **DENIED**. Further, pursuant to 28 U.S.C. § 2253(c), for the reasons discussed, a certificate of appealability is **DENIED**.

**SO ORDERED** on this 20th day of April, 2021.

Reed O'Connor
**UNITED STATES DISTRICT JUDGE**